UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

---

J&J Productions, Inc.,
    Plaintiff

vs

James R. Schmalz, et al.,
    Defendants

Case No. C-1-09-305
(Hogan, M.J.)

**ORDER**

    Before the Court is James R. Schmalz and AFB, Inc.'s Motion for Summary Judgment Against Plaintiff J&J Sports Productions, Inc. (Doc. 60), Plaintiff J&J Sports Productions, Inc.'s Brief in Opposition to Defendants' James R. Schmalz and AFB, Inc.'s Motion for Summary Judgment (Doc. 63), Defendants' Response to Plaintiffs' Brief in Opposition to Motion for Summary Judgment (Doc. 68). Also before the Court is Plaintiff J&J Sports Production, Inc.'s Motion for Summary Judgment (Doc. 62).

## BACKGROUND

    This case involves the boxing program entitled *"The World Awaits": De La Hoya v. Mayweather, Jr.* which was broadcast on May 5, 2007. The program was promoted by Golden Boy Promotions which licensed the residential rights to broadcast the program to Home Box Office, Inc. ("HBO"). (Doc. 56, Ex. 3, Second Affidavit of Michael Berman at ¶ 11). HBO then sublicensed the program to iN Demand under an Event License Agreement, and iN Demand, in turn sublicensed the residential broadcast rights to Third Party Defendant, Time Warner Cable Company ("TWC") through a non-written affiliation agreement. (Second Berman Aff. at ¶12; Doc. 58, Event License Agreement, at ¶1, filed under seal; Ex.2, Affidavit of Michael Berman at ¶3). Under the terms of the Event License Agreement, should the boxing event be inadvertently sold to a commercial establishment, iN Demand, and TWC as its affiliate, would be responsible for the payment of a liquidated damage fee to HBO. (Event License Agreement, at ¶ 1).

    Plaintiff, a commercial distributor of sporting events, purchased the exclusive commercial exhibition licensing rights to the program. (Doc. 2, Complaint at ¶13; Doc. 62, Affidavit of Joseph Gagliardi at ¶ 3, Doc. 63, Declaration of Jeffrey L. Koberg, attached). Plaintiff then entered into sub-licensing agreements with various commercial businesses to which it granted limited sub-licensing rights to allow those businesses to broadcast the fight to their patrons. (Id. at ¶14; Gagliardi Aff. at ¶ 3). The commercial fee to broadcast the program in a commercial establishment the size of Defendants' bar was $4,200.00. (Gagliardi Aff. at ¶ 8, Ex. 1).

On May 5, 2007, Defendants/Third Party Plaintiff James R. Schmalz and AFB, Inc ordered the fight to be viewed at Defendants' place of business, The Back Porch Bar and Saloon. Defendants called Third Party Defendant Time Warner Cable Company ("TWC"), and requested pricing information regarding the fight. Defendant was designated as a commercial account with TWC since the inception of the account. (Doc. 60, Time Warner Cable Account Service Statement, attached). It is undisputed that, at no time, did Defendants possess a "black box" or any equipment used to steal or intercept cable service. (Doc. 56, Fender Aff. at ¶ 6). Defendants were informed by a TWC representative that the cost to broadcast the fight on one television set was $54.95. Defendants ordered the fight and had one television set for those patrons wishing to watch it. Defendants did not advertise for the fight, nor was there a cover charge to enter the premises to view the fight. At approximately 10 p.m., the fight was broadcast on one television set for those who wished to watch it. Defendants subsequently received a billing statement from Time Warner Cable at its place of business, listing the fight as an extra event purchased by the Bar at a cost of $54.95. Defendants then paid TWC the amount billed.

TWC contends that it inadvertently sold the program to Defendants, despite an internal TWC policy that prohibits the sale of boxing events like the De La Hoya fight to such bars. (Doc. 56, Ex. 1, Affidavit of Christopher Fender, at ¶ 4). TWC subsequently paid iN Demand the full amount of liquidated damages due under the terms of the Licensing Agreement. (Second Berman Aff. at ¶¶ 15, 16).

On May 4, 2009, Plaintiff filed the present action alleging that Defendants had illegally stolen, pirated and/or intercepted the cable signal and had illegally shown the fight to its patrons. (Doc. 2). Thereafter, Defendants sued TWC. (Doc. 29, Second Amended Third Party Complaint). Defendants/Third Party Plaintiffs contend that, should they be found liable to Plaintiff, TWC is liable to Defendants for contribution and equitable indemnification, fraud, fraudulent misrepresentation, negligent misrepresentation, and unjust enrichment. (Id.).

## OPINION

A motion for summary judgment should be granted if the evidence submitted to the court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56. *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action. *Celotex*, 477 U.S. at 323.

A party may move for summary judgment on the basis that the opposing party will not be able to produce sufficient evidence at trial to withstand a motion for judgment as a matter of law. In response to a summary judgment motion properly supported by evidence, the non-moving party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *Sixty Ivy Street Corp. v. Alexander*, 822 F.2d 1432,

1435 (6th Cir. 1987); *Harris v. Adams*, 873 F.2d 929, 931 (6th Cir. 1989). Conclusory allegations, however, are not sufficient to defeat a properly supported summary judgment motion. *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1162 (6th Cir. 1990). The non-moving party must designate those portions of the record with enough specificity that the Court can readily identify those facts upon which the non-moving party relies. *Karnes v. Runyon*, 912 F. Supp. 280, 283 (S.D. Ohio 1995)(Spiegel, J.). "[A]fter a motion for summary judgment has been filed, thereby testing the resisting party's evidence, a factual issue may not be created by filing an affidavit contradicting [one's own] earlier deposition testimony." *Davidson & Jones Dev. Co. v. Elmore Dev. Co.*, 921 F.2d 1343, 1352 (6th Cir. 1991).

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial. *Anderson*, 477 U.S. at 249-50. In so doing, the trial court does not have a duty to search the entire record to establish that there is no material issue of fact. *Karnes*, 912 F. Supp. at 283. *See also Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989); *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988). The inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson*, 477 U.S. at 249-50.

If, after an appropriate time for discovery, the opposing party is unable to demonstrate a *prima facie* case, summary judgment is warranted. *Street*, 886 F.2d at 1478 (citing *Celotex* and *Anderson*). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

In 1984, the Cable Communications Policy Act was enacted to "address 'a problem which is increasingly plaguing the cable industry - the theft of cable service.'" *National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900 (6th Cir. 2001)(quoting H.R.Rep. No. 98-934, at 83 (1984), *reprinted in* 1984 U.S.C.C.A.N. 4655, 4720). Plaintiff claims that Defendants violated two statutory provisions of the Act by illegally intercepting and broadcasting the De La Hoya fight at their commercial establishment, The Back Porch Saloon. As an initial matter, Plaintiff points out that the Sixth Circuit has not determined whether liability may be found under both statutes. However, because we find §605 inapplicable to the present facts, as discussed below, we find that such a determination is unnecessary.

### 47 U.S.C. §605(a)

47 U.S.C. § 605 provides in pertinent part that,

> Except as authorized by chapter 119, Title 18, no person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels

of transmission or reception, (1) to any person other than the addressee, his agent, or attorney, (2) to a person employed or authorized to forward such communication to its destination, (3) to proper accounting or distributing officers of the various communicating centers over which the communication may be passed, (4) to the master of a ship under whom he is serving, (5) in response to a subpoena issued by a court of competent jurisdiction, or (6) on demand of other lawful authority. No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. This section shall not apply to the receiving, divulging, publishing, or utilizing the contents of any radio communication which is transmitted by any station for the use of the general public, which relates to ships, aircraft, vehicles, or persons in distress, or which is transmitted by an amateur radio station operator or by a citizens band radio operator.

47 U.S.C. § 605(a).

While citing other non-binding court decisions, the parties' arguments regarding the applicability of § 605(a) rely primarily on two Sixth Circuit opinions: *Cablevision of Michigan, Inc. v. Sports Palace, Inc.*, 27 F.3d 566, 1994 WL 245584 (6th Cir. June 6, 1994); and *National Satellite Sports, Inc. v. Eliadis, Inc.,*, 253 F.3d 900 (6th Cir. 2001). The court in *Cablevision* was faced with a case in which the defendant tavern was sued by a cable television system for broadcasting a boxing match for which the plaintiff had obtained the exclusive right to broadcast. The defendant did not have cable service, but was known to show satellite and video programming on its big-screen television. However, on the night in question, the defendant broadcast the live match by means of videotape[1], rather than by purchasing the right to broadcast the match from the plaintiff. In reaching its decision, the court set forth the applicability of both statutes stating that, "[i]n light of the legislative history, Section 605(a) may be read as outlawing satellite signal piracy, while Section 553 bans only the theft of programming directly from a cable system." *Cablevision*, 1994 WL 245584

---

[1] Apparently, shortly after the fight began on the night in question, a patron arrived with the first three rounds on videotape. As the tape was played on the bar's television, someone recorded the second installment which was then brought to the bar for viewing. In the end, the patron had produced three tapes that allowed the bar to show the fight while it was still in progress. *Cablevision*, 994 WL 245584 at *1.

4

at *3. Giving the term "intercept" its ordinary meaning,[2] the Court found neither statute was violated by the videotaping because there was no suggestion that defendant "seized cable signals in transition or waylaid satellite signals." *Id.* at *4.

Defendant argues that the Sixth Circuit's subsequent decision in *Eliadis,* declined to follow *Cablevision's* precedent and that, therefore, the question as to whether liability may be found under both statutes remains undetermined. We disagree. The court in *Eliadis* was not faced with determining the applicability of both §§ 553 and 605(a), a fundamental difference between the decisions. In contrast to *Cablevision, Eliadis* involved a satellite service provider which sued another satellite service provider, Time Warner Entertainment, for satellite piracy under § 605(a) for transmitting the Bowe-Golota boxing match to a commercial establishment. Notably, the co-owners of the commercial establishment were previously dismissed from the action upon reaching a settlement with the plaintiff, thus leaving Time Warner as the sole defendant. It is undisputed that Time Warner received the match from a satellite signal and not through a cable system, thus rendering § 553 inapplicable to the facts of that case. Time Warner, which was authorized to rebroadcast the satellite signal only to its residential customers, mistakenly sent the signal to a commercial establishment which was erroneously listed as a residential customer. The court found that Time Warner, as an "authorized intermediary," was authorized to receive the communication by satellite signal for the Bowe-Golota boxing match. However, the court went on to hold that, because Time Warner was not authorized to transmit the match to commercial establishments, Time Warner violated the *first* sentence of § 605(a). 253 F.3d at 916. In reaching its decision, the Sixth Circuit found that *Cablevision*'s reliance on *Post & Times-Star,* 475 F.2d 740 (6th Cir. 1973) for the proposition that where "there [is] no interception, the mere fact that the bar divulged or published [a similar boxing match] cannot make it liable under Section 605(a)." *See id.* at *4 (citing *Smith,* 475 F.2d at 741). The Sixth Circuit noted that *Smith*'s holding was limited to an interpretation of the second sentence of § 605(a), not the entire provision. Noting that "interception" was not an element of the first sentence of § 605(a), the interpretation of which the *Eliadis* court was concerned, the court found that the *Cablevision*'s statement, that interception is an element of a claim under § 605(a), applied only to the second sentence of that statute. *Id.* at 916-17.

In light of the above, we find that, as the Sixth Circuit stated in *Cablevision,* § 605(a) prohibits the reception or interception of satellite cable programming "prior to, or not in connection with, distribution of the service over a cable system." *Cablevision,* 1994 WL 245584 at *3; (citing 1984 U.S.C.C.A.N.4655, 4720; 130 Cong. Rec. S14285 (1984) (statement of Sen. Packwood) (amendments to Section 605 "provide a strengthened statutory basis for deterring satellite video piracy"), *reprinted in* 1984 U.S.C.C.A.N. 4738, 4745.)). Section 605(a), thus protects only cable programming as it is being transmitted via satellite signal. *Id.* at *4; *accord Joe Hand Promotions*

---

[2] Because "intercept" was not specifically defined under the Act, the court presumed it was used in its ordinary sense: "to stop, seize, or interrupt in progress or course or before arrival." *Cablevision,* 994 WL 245584 at *4(citing WEBSTER'S NEW COLLEGIATE DICTIONARY 601 (1977); *see also Goldman v. United States,* 316 U.S. 129, 133-34 (1942)(observing that "intercept" under the Communications Act "indicates the taking or seizure by the way or before arrival at the destined place."), *overruled on other grounds, Katz v. United States,* 389 U.S. 347 (1967))

5

*v. Easterling*, NO. 4:08CV1259, 2009 WL 1767579 (N.D.Ohio June 22, 2009)(Section 605(a) "prohibits unauthorized interception of satellite communications" whereas § 553 "governs the unauthorized interceptions of cable service"); *TKR Cable Co. v. Cable City Corp.*, 267 F.3d 196, 207 (3rd Cir. 2001)("[Section] 605 encompasses the interception of satellite transmissions "to the extent reception or interception occurs prior to or not in connection with, distribution of the service over a cable system. Once a satellite transmission reached a cable system's wire distribution phase, it is subject to § 553 and is no longer within the purview of §605")(citing H.R.Rep. No. 98-934, at 83, *reprinted in* 1984 U.S.C.C.A.N. at 4720); *United States v. Norris*, 88 F.3d 462 at 469 (7th Cir. 1996)("cable programming transmitted over a cable network is not a 'radio communication' as defined in §153(b), and thus its unlawful interception must be prosecuted under § 553(a) and not § 605."). Because TWC broadcast the De La Hoya fight to Defendant over a cable system, and not via a satellite signal, we find § 605(a) inapplicable under the present facts. We find, therefore, that summary judgment is appropriate with respect to Plaintiff's claims under § 605(a) as against these defendants.

47 U.S.C.§553

As discussed above, 47 U.S.C. § 553, prohibits the unauthorized reception of cable service. Section 553 provides that as follows:

> (1) No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.
>
> (2) For the purpose of this section, the term "assist in intercepting or receiving" shall include the manufacture or distribution of equipment intended by the manufacturer or distributor (as the case may be) for unauthorized reception of any communications service offered over a cable system in violation of subparagraph (1).

47 U.S.C.§ 553(a).

The parties do not dispute that § 553 is a strict liability statute. However, while Plaintiff argues that Defendants clearly violated this statute merely through its erroneous receipt of the program, Defendants contend that they have not violated the statute because they were "specifically authorized to [receive such] by a cable operator," namely TWC. We find Defendants' argument to be the more persuasive of the two. The Sixth Circuit has not specifically addressed the issue of whether 47 U.S.C.§ 553 is a strict liability statute. However, in an unreported decision out of the Northern District of Ohio, the district court in *Easterling*, held that, "these [§§ 553 and 605(a)] are strict liability offenses with no good faith defense." 2009 WL 1767579 at *4 (citing *Int'l Cablevision v. Sykes*, 997 F.2d 998, 1004 (2nd Cir. 1993); *see also Joe Hand Promotions, Inc. v. Williams*, 2009 WL 348294, at * 2 (W.D.Ky. Feb. 11, 2009)(Intent is not a factor in establishing liability under § 553, but "intent is relevant to the calculation of plaintiff's remedies." Regardless of whether § 553 is a strict liability statute, we must nevertheless determine whether the statute has, in fact, been

violated. We do not believe that it has.

Defendants argue that, because the fight was purchased through TWC, a cable operator, they have not violated the statute. This case appears to be one of first impression for this Court. While Defendants cite the Court to cases wherein commercial defendants were held strictly liable under § 553 for receiving cable transmissions authorized only for residential customers, none of these cases involve the particular facts with which this Court is presented. None of the cases cited by Plaintiff involve commercial defendants, who through no fault of their own, received cable broadcasts which were only authorized to be broadcast by the cable operator to residential customers. In *Easterling*, the defendants received the unlawful broadcast via satellite transmission not through a cable operator. The court held that whether defendants intercepted [the boxing match] through a "black box" or illegal cable drop was a disputed matter making summary judgment inappropriate with respect to the plaintiff's claims under § 553. 2009 WL 1767579 at * 4. In *Williams*, defendants broadcast a boxing match obtained as the probable result of "an unwitting tie-in to the cable line serving the building next door." The Court found, without citation to authority, that intent was not a factor in establishing liability. 2009 WL 348294, at * 2. Despite the irrelevance of defendants' intent, in a subsequent ruling on the issue of damages, the court found that the defendants' claims of ignorance "[rang] hollow." *Joe Hand Promotions v. Williams,* 2010 WL 341513 at * 2 (W.D.Ky. Jan. 22, 2010). Regardless of defendants' intent to intercept cable service, it is clearly undisputed that the *Williams* defendants were not "specifically authorized by a cable operator," namely HBO, to receive the broadcast. Lastly, in *Sykes*, defendant's liability was determined under the portion of § 553 which holds that "[n]o person shall assist in the unauthorized interception of cable signals." Regardless of the lack of *scienter* on defendant's part, it is undisputed that he violated the statute as he sold a device which assisted in the interception of cable signals. For these reasons, we find the cited cases to be distinguishable from the present facts.

Issues of strict liability aside, the cases discussed above involved proactive measures undertaken by defendants, or others in privity with defendants, to intercept or unlawfully receive cable service in violation of § 553. These cases are not particularly helpful to our determination of whether § 533 is violated by the commercial customer who is *specifically authorized by a cable operator* to receive a broadcast but which, unbeknownst to the customer, the cable operator is not authorized to broadcast. Under the plain language of the statute, "[n]o person shall ... receive ... any communications service offered over a cable system, *unless specifically authorized to do so by a cable operator* ...." 47 U.S.C. § 553(a)(1). Nowhere in this language is the term "cable operator" qualified with language indicating that the cable operator must be an "authorized" cable operator. We believe this to be a relevant distinction. Given the stated purpose of the Cable Communications Policy Act, to combat the increasingly occurring theft of cable service, we do not find that Defendants' conduct is the type of conduct which Congress intended to reach. At all times relevant, Defendants were listed as a commercial customer, ordered the program as a commercial customer, were billed and paid for such service, as commercial customers. At no time did Defendants misrepresent their status as a commercial customer. TWC was the cable operator providing cable service to Defendants. It is entirely reasonable for Defendants, wishing

to broadcast the fight in their establishment, to inquire as to the availability and pricing for such from its cable provider. That TWC was not authorized to sell such rights to Defendants was not a fact of which Defendants were aware or should reasonably be expected to be aware. It was TWC's responsibility under the terms of its licensing agreement to make Defendants aware that it was not authorized to sell such rights to Defendants and, if possible, to direct Defendants to the entity which did possess those rights. For these reasons, as well as those stated above, we find that Defendants' conduct did not violate 47 U.S.C. § 553.

Pursuant to 28 U.S.C. §1367, district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if the court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. §1367(c)(3). As the Court has dismissed Plaintiff's sole claim against Defendant, the Court hereby declines to exercise supplemental jurisdiction over Defendant's state law counterclaim. Accordingly, Plaintiff's state law claim for conversion shall be dismissed without prejudice.

**IT IS THEREFORE ORDERED THAT**

1) Plaintiff's Motion for Summary Judgment (Doc. 62) be DENIED.

2) Defendants' Motion for Summary Judgment (Doc. 60) be GRANTED and Counts I and II of Plaintiff's Complaint be DISMISSED.

3) Count III of Plaintiff's Complaint be DISMISSED WITHOUT PREJUDICE

SO ORDERED.

Date: 9/16/10

Timothy S. Hogan
United States Magistrate Judge

J:\LES\SUMJUDG\schmalz2.msj.wpd

8